

One South Church Avenue Suite 700
Tucson, Arizona 85701-1611
Telephone: (520) 622-2090

**Rob M. Charles, Jr., State Bar No. 007359**
  Direct Dial: (520) 629-4427
  Direct Fax: (520) 879-4705
  EMail: RCharles@LRLaw.com
**Jeffrey L. Sklar, State Bar No. 026372**
  Direct Dial: (520) 838-7742
  Direct Fax: (520) 879-4712
  EMail: JSklar@LRLaw.com

Attorneys for Plaintiff Dealer Services Corporation

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter: 7 |
| MICHAEL BONEBRAKE and EVELYN BONEBRAKE, | Case No. 2:10-BK-23353-CGC |
| Debtors. | **APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT MICHAEL BONEBRAKE** |
| DEALER SERVICES CORPORATION, | Adv. Pro. No. 2:10-ap-01922-CGC |
| Plaintiff, | |
| v. | |
| MICHAEL BONEBRAKE, a/k/a MICHAEL R. BONEBRAKE, d/b/a ATM MOTORS, | |
| Defendant. | |

Pursuant to Federal Rule of Bankruptcy Procedure 7055 and Federal Rule of Civil Procedure 55(b), Plaintiff Dealer Services Corporation ("DSC"), requests that this Court enter a default judgment of nondischargeability in the amount of $21,287.71 against defendant Michael Bonebrake, a/k/a Michael R. Bonebrake, d/b/a ATM Motors. The clerk previously entered default on December 21, 2011 (Dkt. #21). This motion is made and based upon the pleadings and papers on file herein, the following memorandum of points and authorities, and the accompanying Declaration of Gary Hoke.

. . .

. . .



. . .

## MEMORANDUM OF POINTS AND AUTHORITIES

DSC is entitled to a default judgment that Debtor's $21,287.71 debt to DSC is nondischargeable under Sections 523(a)(4) and (a)(6) of the Bankruptcy Code. Debtor failed to respond to DSC's First Amended Complaint, so the clerk entered default. The default had the effect of deeming admitted the factual allegations of the First Amended Complaint. As a result, Debtor, a car dealer, has admitted that:

- DSC, his lender, made advances of funds for the purchase of his inventory;
- When that inventory was sold, Debtor was contractually obligated to hold the sales proceeds in trust for DSC, then remit them to the extent necessary to repay the advances;
- Debtor breached his obligations to DSC by selling 12 vehicles without remitting some or all of the sales proceeds to DSC.

By engaging in this conduct, Debtor committed defalcation as a fiduciary, which gives rise to nondischargeability under Section 523(a)(4). He also committed a willful and malicious conversion, which gives rise to nondischargeability under Section 523(a)(6).

In addition, Debtor has admitted that the amount of the debt to be declared nondischargeable is $21,287.71. As explained in the First Amended Complaint, this is the principal balance owed by Debtor on the 12 vehicles sold out of trust. Therefore, DSC is entitled to a default judgment that Debtor's $21,287.71 is nondischargeable under Sections 523(a)(4) and (a)(6).

## I. PROCEDURAL HISTORY

On October 27, 2010, DSC filed its adversary complaint against Debtor Michael Bonebrake alleging the nondischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6), as well as seeking denial of discharge under 11 U.S.C. § 727 (Dkt. #1). The summons was issued on November 4, 2010 (Dkt. #4) and served by mail that same day pursuant to Fed. R. Bankr. P. 7004 (Dkt. #5). On December 3, 2010, Debtor filed a Response (Dkt. #6).

. . .

2604827.1



1   This Court treated Debtor's Response as a motion to dismiss, and on October 12,
2   2011, it issued an order partially granting and partially denying the motion (Dkt. #15). That
3   order allowed DSC to file an amended complaint within 14 days. On October 25, 2011,
4   DSC filed its First Amended Complaint, which re-alleged the nondischargeability claims
5   under Section 523(a), but dropped the denial of discharge claim (Dkt. #17). Debtor was
6   validly served with the First Amended Complaint via U.S. Mail.

7   Pursuant to Fed. R. Bankr. P. 7012(a) and 9006(f), Debtor was required to respond to
8   the First Amended Complaint by November 18, 2011. Debtor did not do so, and on
9   November 30, 2011, DSC filed its Application for Entry of Default (Dkt. #18), which was
10  accompanied by the Affidavit of Jeffrey Sklar (Dkt. #19). The clerk entered default on
11  December 21, 2011 (Dkt. #21).

12  **II.    LEGAL STANDARD**

13  The effect of the clerk's entry of default against Debtor is to deem admitted the
14  factual allegations of DSC's First Amended Complaint. *Fair Housing of Marin v. Combs*,
15  285 F.3d 899, 906 (9th Cir. 2002) ("[T]he general rule is that well-pled allegations in the
16  complaint regarding liability are deemed true."), *In re Villegas*, 132 B.R. 742, 746 (B.A.P.
17  9th Cir. 1991) ("[T]he effect of entry of a default is to deem allegations admitted."). Taking
18  the allegations of the First Amended Complaint as true, DSC has sufficiently pled its claims
19  against Debtor for entry of a monetary judgment and a declaration that this debt to DSC is
20  non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6). Entry of default judgment
21  is therefore proper.

22  **III.   FACTS DEEMED ADMITTED**

23  DSC's First Amended Complaint alleges, and Debtor has admitted, that Debtor failed
24  to repay funds that he was required to hold in trust for DSC. The funds were advanced by
25  DSC for the purchase of inventory at Debtor's dealership, pursuant to a Demand Promissory
26  Note and Security Agreement ("Note") dated May 14, 2009. First Amended Complaint
27  ("FAC") ¶ 6. A true and accurate copy of the Note was attached to the FAC and is attached
28



1 hereto as **Exhibit 1**. The Note provided DSC a security interest in all Debtor's assets and personal property, including the vehicles. *Id.* ¶ 5.

Under the Note, DSC was to provide periodic advances for the purchase of Debtor's inventory. *Id.* ¶ 6. Once that inventory was sold, Sections 4(f) and 5(g) of the Note (the "Trust Provisions"), required Debtor to hold the sales proceeds in trust for the sole benefit of DSC. *Id.* ¶ 18. The proceeds were to be remitted promptly to DSC within 24 hours of such sales. *Id.* The Note also provides that if Debtor defaults, he must pay to DSC all reasonable legal fees, expenses and collection costs incurred as a result of that default. *Id.* ¶ 8.

Between May 14, 2009 and September 10, 2009, DSC made several advances for the purchase of vehicles in Debtor's inventory. *Id.* ¶ 10. Debtor then sold those vehicles without holding the sales proceeds in trust for DSC, as required by the Trust Provisions. DSC has still not recovered 12 of those vehicles. *Id.* ¶¶ 12-14. As to six of them, Debtor has repaid DSC nothing at all. *Id.* ¶ 16. Debtor's outstanding principal balance to DSC is $21,287.71. *Id.* ¶ 17. A list of the 12 vehicles, including year, make, model, advance date, and the principal balance remaining on each vehicle, was attached to the FAC and is attached as Exhibit A to the accompanying Declaration of Gary Hoke. Due to Debtor's failure to repay the advances, DSC declared the Note to be in default on October 11, 2009. *Id.* ¶ 12.

## IV. ARGUMENT

### A. DSC Is Entitled To A Default Judgment On Its Claim In Count I For Defalcation In A Fiduciary Capacity (11 U.S.C. § 523(a)(4)).

Count I alleges defalcation as a fiduciary under Section 523(a)(4). Defalcation is the "'misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.'" *In re Lewis*, 97 F.3d 1182, 1186 (9th Cir. 1996), quoting BLACK'S LAW DICTIONARY 417 (6th ed. 1990).[1] Defalcation "'includes the innocent default of a fiduciary who fails to account fully for money received.'" *Lewis*, 97 F.3d at 1186,

---

[1] *See also In re Banks*, 263 F.3d 862, 870 (9th Cir. 2001), quoting *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997) ("Such a debt is nondischargeable under § 523(a)(4) only 'where (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created.'").

2604827.1



quoting *In re Baird*, 114 B.R. 198, 204 (9th Cir. B.A.P. 1990). A party may be liable for defalcation regardless of whether he acted intentionally or negligently. *Id.* Indeed, defalcation "'reach[es] the conduct of all fiduciaries who [are] short in their accounts.'" *Id.*, quoting *In re Baird*, 114 B.R. at 204. A fiduciary relationship under Section 523(a)(4) applies in cases of an "express or technical trust[s]." *Id.* at 1185. Whether such a trust relationship exists is a question of federal law, but courts look partly to state law. *In re Cantrell*, 329 F.3d 1119, 1125-26 (9th Cir. 2003).[2]

In very similar circumstances to this case, the Bankruptcy Court for the District of Arizona recently held that another DSC dealer had defalcated under Section 523(a)(4) by failing to repay its sales proceeds to DSC. *In re Katiba*, 2010 WL 2495407, *1 (Bankr. D. Ariz. June 16, 2010) (Marlar, J.). The note in that case was identical in all relevant respects to Debtor's Note in this case. The dealer appealed to the district court, which affirmed. It noted that even though the debtor claimed to have had no idea what happened to the funds, that did "not create a defense to [his] obligation to segregate and protect trust fund proceeds for DSC's benefit." *In re Katiba*, U.S. Dist. Ct. Case No. 4-10-cv-00774-DCB, Dkt. #13. The district court order affirming the bankruptcy court is attached as **Exhibit 2**.

Here, by virtue of his default, Debtor admitted all the facts necessary for this Court to declare that his debt is nondischargeable under Section 523(a)(4). The Trust Provisions of the Note created an "express or technical trust" for purposes of Section 523(a)(4) because they explicitly required Debtor to hold the sales proceeds in trust for DSC, then remit them within 24 hours. Moreover, by failing to respond to the FAC, Debtor has admitted that he failed to comply with the Trust Provisions. That alone constitutes defalcation, because as

---

[2] Here, the parties agreed that Indiana law would govern the Note's validity, enforceability, and interpretation. *See* Ex. 1, p. 9 ¶ 21. Under Indiana law, an express trust signifies a trust created by the direct and positive acts of the parties as evidenced by some deed, will, or other instrument, wherein the language employed either expressly or by plain implication evinces an intention to create a trust." *Ross v. Thompson*, 146 N.E.2d 259, 261 (Ind. App.1957), citing *Holsapple v. Schrontz*, 117 N.E. 547, 549 (Ind. App.1917). "If the intent to create a trust is clear and the essential elements may be fairly deduced from the language employed, the trust will not fail for the lack of more adequate expression." *Holsapple*, 117 N.E. at 549. The Trust Provisions of the Note therefore create an express trust under Indiana law.

2604827.1



*Lewis* makes clear, Debtor's intent and state of mind are irrelevant. It is sufficient that Debtor failed to repay DSC.

**B. DSC Is Entitled To A Default Judgment On Its Claim In Count II For Willful And Malicious Injury (11 U.S.C. § 523(a)(6)).**

Section 523(a)(6) provides that a debt is nondischargeable if it was a "willful and malicious injury" by the debtor to another entity or the property of another entity. The analysis under Section 523(a)(6) involves two steps. First, courts ask whether the debtor engaged in "tortious" conduct. They then ask whether that conduct was "willful and malicious." *Lockerby v. Sierra*, 535 F.3d 1038, 1040-41 (9th Cir. 2008).

**a. Debtor's Conduct Constitutes The Tort Of Conversion.**

A breach of contract can become tortious if it violates an independent duty arising from principles of state tort law. *In re Jercich*, 238 F.3d 1202, 1206 (9th Cir. 2001). Therefore, conduct that constitutes conversion under state law is sufficient to satisfy the "tortious" element of Section 523(a)(6). *Id.* at 1208.

In Arizona, conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, 91 P.3d 362, 365 (App. 2004). Money can be the subject of a conversion claim if it "can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Id.*[3]

Here, Debtor converted the sales proceeds that it was required to hold in trust and remit to DSC. Under the Note, including the Trust Provisions, DSC had the right to possess those funds. Debtor failed to remit the funds, which wrongfully deprived DSC of its right to

---

[3] Debtor's tort law duties are governed by Arizona law. This is because Indiana law governs only the validity, enforceability, and interpretation of the Note. Ex. 1, p. 9 ¶ 21. It does not supply any independent tort law duties for purposes of Section 523(a)(6). Nevertheless, Indiana's definition of conversion is substantively identical to Arizona's. *See McKeighen v. Daviess County Fair Board*, 918 N.E.2d 717, 723 (Ind. App. 2009) (defining conversion as "knowing or intentional exertion of unauthorized control over the property of another"), *Newland Resources, LLC v. Branham Corp.*, 918 N.E.2d 763, 776 (Ind. App. 2009) (providing that failure to pay money can be subject of conversion action if it is a "determinate sum with which the defendant was entrusted to apply to a certain purpose.").



possess them. Moreover, because those funds are the proceeds from the sales of Debtor's inventory, they can be "described, identified or segregated." Likewise, the obligation to treat those funds in a specific manner is established by the Trust Provisions of the Note.

### b. Debtor's Conduct Was Willful And Malicious.

For a conversion to be willful, the debtor must have a subjective motive to inflict injury or believe that injury is substantially certain to result from the conduct. *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). The debtor is charged with "knowledge of the natural consequences of his actions." *Id.* Here, Debtor has admitted that he acted willfully. As alleged in the FAC and admitted by Debtor's default, Debtor had a "subjective motive to inflict the injury," or "knew or should have known that his failure to [repay] DSC was substantially certain to cause injury to DSC." FAC ¶ 32.

Whether an injury is malicious may be inferred from the nature of the act. *Ornsby*, 591 F.3d at 1207. For an injury to be malicious, it must involve: (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *In re Barboza*, 545 F.3d 702, 706 (9th Cir. 2008). This definition overlaps with Arizona's definition of conversion. *See Gehrke*, 208 Ariz. at 143, 91 P.3d at 365. Here too, Debtor has admitted all the necessary elements. FAC ¶ 33.

### C. DSC's Damages Are For A Sum Certain Or A Sum That Can Be Made Certain By Computation.

Fed. R. Civ. P. 55(b)(1), as incorporated by Fed. R. Bankr. P. 7055, allows the clerk – or by implication, the Court – to enter judgment for the amount due if that amount is a "sum certain or a sum that can be made certain by computation," if the defendant has not appeared and is neither a minor nor incompetent person. Here, all those requirements have been satisfied. The amount due is a sum certain, $21,287.71, as evidenced by the accompanying Declaration of Gary Hoke. That amount is the principal balance owed to DSC, which is not seeking to recover any interest.

. . .

. . .



Moreover, Debtor failed to respond to the FAC, so he has not appeared. In addition, Debtor is neither a minor nor incompetent. Hoke Declaration, ¶ 15.[4]

## V. RELIEF REQUESTED.

Based on the foregoing, DSC respectfully requests this Court enter a default judgment in its favor on all Counts in its First Amended Complaint against Defendant Michael Bonebrake individually as follows:

   A.   Declaring that the principal balance of $21,287.71 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (a)(6);

   B.   Awarding costs pursuant to Rule 7054(b) of the Federal Rules of Bankruptcy Procedure as set forth in a separate Statement of Costs to be filed after the conclusion of the hearing on this Motion;

   C.   Awarding attorneys' fees pursuant to the Note and A.R.S. § 12-341.01 as set forth in a separate Application for Attorneys' Fees to be filed after the conclusion of the hearing on this Motion; and

   D    For such further relief as is appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 18th day of January, 2012.

LEWIS AND ROCA LLP


By  /s/ Jeffrey L. Sklar
    Rob M. Charles
    Jeffrey L. Sklar

*Attorneys for Plaintiff*
*Dealer Services Corporation*

---

[4] There is Ninth Circuit case law providing that a clerk's entry of judgment is void if the defendant has previously appeared. *See, e.g., Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.2d 922, 927 (9th Cir. 2004). Here, the filing of Debtor's document that was interpreted as a motion to dismiss the original complaint should not be interpreted as an appearance. For a document to constitute an appearance, it must evidence the defendant's intent to defend itself. Debtor has evidenced no such intent since the filing of the First Amended Complaint. But if there is any doubt as to whether Debtor has appeared, DSC asks that the Court, rather than the clerk, enter the default judgment. This is because a court may enter a default judgment even against a party that has appeared. *See* Fed. R. Civ. P. 55(b)(2). In case this application is ruled upon by the Court rather than the clerk, DSC will provide Debtor with notice of this application pursuant to Fed. R. Bankr. P. 7055 and Fed. R. Civ. P. 55(b)(2).



## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2012, the foregoing document has been filed electronically using the Court's ECF system and served by U.S. Mail, postage prepaid, upon the party identified below:

Michael Bonebrake
648 North Bermuda Drive
Mesa, Arizona 85205

Debtor

/s/ *Audrey M. Saxton*

2604827.1